**Karen ADAIR, Plaintiff,**

v.

**BOSTON MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**No. 4:98–CV–3 (JRE).**

United States District Court,
M.D. Georgia,
Columbus Division.

Oct. 26, 1998.

Pete Robinson, Virgil Ted Theus of Self, Mullins, Robinson, Marchetti & Kamensky, P.C., Columbus, GA, for Plaintiff.

H. Sanders Carter, Jr., John L. McKinley of Carter & Ansley, Atlanta, GA, for Defendant.

*OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

ELLIOTT, District Judge.

The Plaintiff has brought the action above identified to recover accidental death benefits under a life insurance policy issued to her former husband, James Adair, in which policy the Plaintiff was the designated beneficiary. The case is now before the court on the Defendant's motion for summary judgment and the issue presented is whether there is any evidence upon which a jury could find that the insured's death was accidental within the terms of the policy.

Mr. Adair, the insured, died from an undetermined cause in January, 1997, and after receiving the Plaintiff's claim the insurance company paid to the Plaintiff the basic life insurance benefits and other benefits due under the policy, but denied the Plaintiff's claim for accidental death benefits because the Plaintiff did not provide proof that Mr. Adair's death was accidental within the terms of the policy.

The accidental death coverage was described in a policy rider that provided in pertinent part that the insurance company would pay that benefit "upon proof that the death of the insured occurred as a result of accidental bodily injury directly and independently of all other causes."

The Plaintiff and Mr. Adair were divorced in December, 1996, the month before his death, and Mr. Adair's body was found on January 28, 1997, on the floor of the bathroom of an apartment that he had rented three weeks earlier. His death was investigated by the County Coroner and by the Police Department. Pursuant to his duty, the coroner investigated the cause and manner of death and personally inspected the body. The body had decomposed considerably. The coroner stated in his report that the deceased "shows no signs of injury or trauma." Due to the advanced state of decomposition no internal postmortem examination or toxicology testing was done, and based on all available information the coroner determined that the cause of death could not be determined.

It was known that for about one year prior to his death Mr. Adair had suffered from Guillain–Barre syndrome, which is a neurological disease of unknown origin which causes the sufferer considerable pain, and his treating physician had prescribed his use of two medications, Methadone and Valium, and the coroner observed two bottles of these medications which were partially full in the bathroom near Mr. Adair's body. It was impossible to determine whether any pills had been ingested on the date of death and if so whether they were ingested intentionally or accidentally.

The Plaintiff has filed an affidavit of James H. Johnson, M.D., and she contends that this affidavit creates a jury issue. The Defendant contends that Dr. Johnson's affidavit should be excluded from evidence because the Plaintiff has not previously identified Dr. Johnson as being a potential witness and never submitted an expert report from Dr. Johnson as mandated by the pertinent rules, and his affidavit was not filed until after the Defendant had filed its motion for summary judgment, and Dr. Johnson has not been qualified to express the opinions in his affidavit, pointing out the fact that Dr. Johnson is a family practice physician and that does not qualify him as an expert on death investigations and cause of death, particularly since he never treated Mr. Adair while he was alive, nor participated in an investigation of his death.

The Court pretermits discussion of the question of admissibility, but notes that in this affidavit Dr. Johnson states that he has reviewed pertinent documents, including the coroner's death report and the records of two physicians relating to the history and treatment of Mr. Adair and

> "Based upon information contained in the above-stated investigatory and medical records including the fact that James V. Adair had a medical history of chronic pain which required the use of various pain medication, it is my opinion that shortly before his death, in an attempt to alleviate painful symptoms, James F. Adair ingested a higher dose of Valium and Methadone than was prescribed by Dr. Kenneth Barngrover based upon a belief by Mr.

Adair that his body would tolerate a higher dose of medication than was prescribed. Though I cannot state with certainty what caused the death of James V. Adair, it is my opinion that his death was the result of an accidental overdose of Methadone and Valium."

It is the Court's view that even if the affidavit of Dr. Johnson is given consideration it does not create a jury issue because when insuring language such as that in the Defendant's insurance policy is used, "[t]he focus is on the occurrence or happening which produces the result, not the result itself." *Laney v. Continental Ins. Co.*, 757 F.2d 1190 (11th Cir.1985).[1] Here the Plaintiff was required by the policy to submit proof that the death of the insured occurred ... as a result of accidental bodily injury directly and independently of all other causes. In other words, the policy is not concerned with whether Mr. Adair's death was intended but with whether the cause of his death was accidental, i.e. the result of an *unintentional* act. If Mr. Adair took his pills intentionally, though without any intent to end his life, if his death resulted from that intentional act, his death would not be "accidental" within the terms of the policy.

Consistent with the foregoing, the Court concludes that the Defendant's motion for summary judgment should be and is hereby sustained, and an appropriate judgment will be entered.

---

1. In *Laney* the death resulted from the voluntary consumption of an excessive amount of whiskey and beer.